J-A26041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RAY M. KREIDER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DAVID CORREIA; OAK TREE REAL ESTATE, LLC; MONUMENT STREET FUNDING, LLC; AND FIRST AMERICAN TITLE INSURANCE COMPANY | |
| | No. 2111 MDA 2016 |

Appeal from the Order Entered December 14, 2016
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-09-07984

BEFORE:  BOWES, J., OLSON, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.:                    **FILED JANUARY 11, 2018**

Appellant, Ray M. Kreider, appeals from the trial court's orders entered April 1, 2016, July 25, 2016, and December 14, 2016, granting summary judgment in favor of Appellees, David Correia; Oak Tree Real Estate, LLC ("Oak Tree"); Monument Street Funding, LLC ("Monument"); and First American Title Insurance Company ("First American").  After careful review, we affirm and grant Appellees' motion to dismiss Appellant's breach of fiduciary duty/negligence claims for waiver.

We adopt the following statement of facts and procedural history from the trial court opinion, which in turn is supported by the record.  ***See*** Trial Court Opinion (TCO), 3/15/17, at 2-9.  In March 1977, Paul and Barbara Staab

acquired a parcel of land ("the Property") located in Columbia, Pennsylvania, from Maurice Fitez and Evelyn Beecher Fitez. In August 1986, the Staabs acquired an adjacent .22-acre parcel of land ("the parcel") from Evelyn Beecher Fitez. Subsequent to acquiring both parcels, the Staabs took out a home equity loan on the Property only. They eventually defaulted on that mortgage, which was later assigned to Monument, which then commenced a mortgage foreclosure action. Following the successful foreclosure of the Property, Monument purchased it at sheriff's sale and obtained a sheriff's deed. It then placed the Property on the market to be sold.

Appellant approached Mr. Correia, an agent in the employ of Oak Tree, about purchasing the Property. Mr. Correia incorrectly informed Appellant that a two-car garage and surrounding land were part of the Property, though in reality, they were attached to the Parcel. An MLS listing also incorrectly stated that the Property consisted of .68 acres and included a two-car garage. In June 2007, Appellant entered a written contract with Mr. Correia to purchase the Property from Monument for $52,000.00. At that time, he did not review the deed.

Several months later, the Staabs sold the Parcel to Joseph Ritchey. In September 2007, Mr. Ritchey informed Appellant that the garage was part of his property. Appellant went to the courthouse and reviewed the title record for the first time and subsequently gave possession of the garage to Mr. Ritchey. In August 2008, for the first time, Appellant had a survey of the

Property conducted. Appellant discovered that the Parcel contained a twenty-two-foot overlap with the Property in addition to the problems with the garage.

In April 2009, Appellant received a cease and desist order from a zoning board officer, as the foreclosure had created two separate parcels and a resulting impermissible decrease in lot size. He appealed to the zoning board and simultaneously filed an action to quiet title against Mr. Ritchey and a writ of summons against Mr. Correia and Oak Tree.[1] While Appellant was unsuccessful before the zoning board, the Court of Common Pleas of Lancaster County reversed the board's ruling.

Meanwhile, the lawsuits against Appellees proceeded. First American and Monument filed answers with new matters. Monument asserted a cross-claim against Mr. Correia and Oak Tree, asserting that if the claims in the complaint were found to be true, Mr. Correia and Oak Tree were solely liable. Mr. Correia and Oak Tree filed an answer to the cross-claim and their own cross-claim against Monument. Two years then passed, the suits languished, and were eventually dismissed due to lack of activity on the docket. After the actions were reinstated, the parties began filing motions seeking summary judgment.

Monument filed a motion for summary judgment against Appellant and a cross-motion against Mr. Correia and Oak Tree. Mr. Correia and Oak Tree responded, as did Appellant. Monument filed a reply. First American filed a

---

[1] Monument was joined as a defendant two years later by writ of summons, and First American was joined as a defendant with the filing of the complaint.

motion for summary judgment and Appellant filed a reply. Prior to the resolution of the motions, the parties unsuccessfully attempted mediation. Following the conclusion of mediation, the court entered summary judgment in favor of First American. The court entered summary judgment in favor of Monument and against Appellant, and denied Monument's cross-motion against Mr. Correia and Oak Tree.

Mr. Correia and Oak Tree then filed a motion for summary judgment against Appellant. When Appellant did not respond, the court entered summary judgment in favor of Mr. Correia and Oak Tree. However, Appellant filed an untimely answer to the motion, essentially requesting reconsideration of the order and averring that he had miscalculated the number of days to file a response. The court granted his request but ultimately granted summary judgment in favor of Mr. Correia and Oak Tree.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court issued a responsive opinion.

On appeal, Appellant presents the following questions for our review, which we have reworded for clarity:

> 1. Did the lower court commit an error of law and/or abuse its discretion when it granted Monument Street Funding, LLC's motion for summary judgment and dismissed the breach of contract claims based upon the merger doctrine and the express language of the deed, and dismissed Appellant's tort claims as barred by the statute of limitations?

2. Did the lower court commit an error of law and/or abuse its discretion when it granted David Correia's and Oak Tree Real Estate, LLC's motion for summary judgment and dismissed Appellant's breach of contract claims based upon the express language of the agreement of sale and failing to apply the parol evidence rule, and dismissed Appellant's breach of fiduciary duty claim?

3. Did the lower court commit an error of law and/or abuse its discretion when it granted First American Title Insurance Company's motion for summary judgment and dismissed Appellant's breach of contract claim based upon the express language of the agreement of sale.

*See* Appellant's Brief at 9-10 (unnecessary capitalization omitted).

Our scope and standard of review of an order granting summary judgment are well-settled.

[S]ummary judgment is properly granted where there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law. Summary judgment may be granted only where the right is clear and free from doubt. The moving party has the burden of proving that there is no genuine issue of material fact. The record and any inferences therefrom must be viewed in the light most favorable to the nonmoving party, and any doubt must be resolved against the moving party. The trial court will be overturned on the entry of summary judgment only if there has been an error of law or a clear abuse of discretion.

*First Wisconsin Trust Co. v. Strausser*, 653 A.2d 688, 691 (Pa. Super. 1995) (internal citations and quotations omitted).

After thorough review of the record, the briefs of the parties, the applicable law, and the well-researched opinion of the Honorable Jeffrey D. Wright, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. *See* TCO at 9-23 (finding: (1) Appellant's breach of contract claim against

Monument is barred by merger doctrine and the express language of the deed; Appellant's tort claims against Monument are barred by the statute of limitations as at the latest, the statute began to run in August 2008; (2) summary judgment was properly granted in favor of Mr. Correia and Oak Tree as to the breach of contract claim based on the express language of the sales agreement and because of the merger doctrine; (3) summary judgment was properly granted as to the breach of fiduciary duty claim pursuant to the Real Estate Licensing and Registration Act (RELRA), since certain language in the deed could not be said to be the cause of Appellant's harm; and (4) summary judgment was properly granted in favor of First American because it was a party to the title insurance policy, and even if it was not, the policy expressly excludes defects that a survey would have shown).[2]  Accordingly, we affirm on the basis of the trial court's opinion.

---

[2] In Appellant's reply brief, he argued that the breach of fiduciary duty claim against Mr. Correia was not a private cause of action pursuant to RELRA, but instead, premised upon a traditional breach of fiduciary duty/negligence.  In response Mr. Correia and Oak Tree filed a motion to dismiss this issue for waiver, as in the lower court, the only claim preserved in Appellant's Pa.R.A.P. 1925(b) statement was that the court did not apply 63 P.S. § 455.606, the section of RELRA relating to relationships between brokers and consumers of real estate services.

As Appellant preserved only this issue in his 1925(b), and the court addressed only this issue, we find Appellant's common law claims waived for failure to preserve them in the lower court.  **See** Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal).  Accordingly, we grant Appellees' motion.

Application to dismiss granted. Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2018

Circulated 12/15/2017 10:26 AM

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

RAY M. KREIDER                            :
                                          :
        vs.                               :        CI-09-07984
                                          :
DAVID CORREIA, OAK TREE REAL              :
ESTATE, LLC, MONUMENT STREET              :
FUNDING, LLC and FIRST AMERICAN           :
TITLE INSURANCE COMPANY                   :


**OPINION**


BY: WRIGHT, J.                                      March 15 , 2017


This Opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of

Appellate Procedure. Appellant, Ray M. Kreider, appeals this Court's December 14,

2016, July 25, 2016, and April 1, 2016 Orders granting Summary Judgment in favor of

Defendants and against Plaintiff. Plaintiff was ordered to submit a Concise Statement of

Errors Complained of on Appeal, which was timely received. Upon review of the

Statement, the record, and Defendants First American Title Insurance Company's (First

American's) and Monument Street Funding, LLC's (Monument's) responses thereto, I

maintain that my Orders granting summary judgment were proper, and submit this

Opinion accordingly.

1

1202a

## BACKGROUND

Plaintiff Ray M. Kreider purchased a piece of real property (the Property), but did not review the title nor conduct a survey prior to purchasing it. As a result, he received less than he expected and brought a series of lawsuits. The relevant history is as follows:

Paul and Barbara Staab owned two pieces of real property in Columbia Pennsylvania. (Opinion, Land Use Appeal, CI-09-14813, 06/28/10). The Staabs acquired the first parcel (the Property) from Maurice E. Fitez and Evelyn Beecher Fitez in March, 1977. (Motion of Defendant Monument, 07/23/15, Exhibit M, Deed). The Staabs then acquired the second, adjacent, .22-acre property (the Ritchey Parcel), nine (9) years later, in August, 1986, from Evelyn Beecher Fitez. (Id., Exhibit N, Deed).

After obtaining both the Property and the Ritchey Parcel, the Staabs took out a home equity loan on only the Property through First Union Home Equity Bank. (Id., Exhibit O, Mortgage dated 04/16/1986). The Staabs eventually defaulted on that Mortgage, which was assigned to Defendant Monument, who commenced a foreclosure action in the Lancaster County Court of Common Pleas. (CI-05-08727). Monument succeeded in foreclosing on the Property, and purchased it at the sheriff's sale, obtaining a Sheriff's Deed to the Property. (Motion for Defendant Monument, 07/23/15, Exhibit S, Sheriff's Deed dated 02/28/07) (legal description also matching the previous deeds). Thereafter, Plaintiff purchased the Property from Monument through an agent, Defendant Correia, who worked for Defendant Oak Tree Real Estate, LLC. [hereinafter, Oak Tree]. (Complaint, 12/08/11).

2

Before Plaintiff purchased the Property, Defendant Correia incorrectly told Plaintiff that a two-car garage and surrounding land, which were actually part of the Ritchey Parcel, were part of the Property. Id. Plaintiff also read, in an MLS listing, that the Property consisted of .68 acres and included a two-car garage. Id. (Exhibit A). Based on these beliefs, around June 7, 2007, Plaintiff entered a written contract with Correia to purchase the property from Monument for $52,000. Id. (Exhibit B, Agreement of Sale). The purchase was finalized shortly thereafter, the deed was signed, and Plaintiff purchased title insurance on the property from Defendant First American. Id. (Exhibit C) (Exhibit D) (Deed dated June 29, 2007) (policy dated July 24, 2007). Plaintiff did not however, review the deed until several months later. (Motion of Defendant Monument Street Funding, LLC, for Summary Judgment, 6/23/15, Exhibit L, Oral Deposition of Ray M. Kreider at 37) (Hereinafter, Kreider Deposition)

Several months after Plaintiff's closing, the Staabs sold their remaining, adjacent parcel, to Joseph C. Ritchey. (Complaint, 12/08/11, Exhibit E) (Deed from the Staabs to the Rticheys, dated 09/27/07, recorded 09/28/07); (Opinion, Land Use Appeal, CI-09-14813, 06/28/10). After the sale of that parcel, in September 2007, Mr. Ritchey informed Plaintiff that the garage was actually part of his property. (Opinion CI-09-14813, 06/28/10); (Complaint, 12/08/11); (Kreider Deposition, at 37). Upon speaking with Mr. Ritchey, Plaintiff went to the courthouse and reviewed the title record for the first time. Id. After reviewing the record, Plaintiff gave Mr. Ritchey possession of the garage. (Opinion CI-09-14813, 06/28/10); (Kreider Deposition at 35–37). Then, also for the first time, in August 2008, Plaintiff had a survey of the Property conducted. (Kreider Deposition, at 152–53). Upon receiving the results, Plaintiff discovered that, in addition

3

to not owning the garage, deeds to the Property and the Ritchey Parcel contained a twenty-two-foot overlap. Id.

After receiving the survey results, Plaintiff took no further action until April 2009, when he received a Cease and Desist Order from the local Zoning Officer for a violation. (Opinion, Land Use Appeal, CI-09-14813, 06/28/10) (quoting Cease and Desist Order issued April, 2009).[1] The violation occurred because the foreclosure on the Property created two separate parcels, causing an impermissible decrease in lot size. Id. In response to the Cease and Desist Order, Plaintiff promptly appealed to the Zoning Hearing Board (ZHB). (Notice of Appeal, CI-09-14813, 10/08/09) (averring that the appeal to the ZHB was filed in April, 2009). After filing the appeal to the ZHB, Plaintiff also filed a Quiet Title action against Ritchey in the Lancaster County Court of Common Pleas, and simultaneously commenced the immediate action by filing a Praecipe for Writ of Summons against Defendants Correia and Oak Tree. (Complaint, CI-09-07922, 05/21/09). (Praecipe for Writ of Summons, CI-09-07984, 05/21/09).[2]

About four months after he filed the Quiet Title action and Writ of Summons, the ZHB denied Plaintiff's appeal, which Plaintiff then appealed to the Lancaster County Court of Common Pleas (Notice of Appeal, CI-09-14813, 10/8/08) (appeal denied by ZHB 09/08/09). In that appeal, the Honorable Howard F. Knisely reversed the ZHB's

---

[1] Plaintiff's Complaint avers that his response to discovering the overlap was to file a Quiet Title action in the Lancaster County Court of Common Pleas, but neglects to mention that the action was not filed until a year-and-a-half later, and only after receiving the cease and desist order.

[2] Defendant Monument was added almost two years later by Writ of Summons filed April 1, 2011, and then Defendant First American with the filing of the Complaint. (Praecipe to Amend and Reissue Writ of Summons, CI-09-07984, 04/01/11); (Complaint, CI-09-07984, 12/08/11).

4

Returning to the instant action, after Plaintiff filed the underlying Complaint, Defendants First American and Monument filed Answers with New Matter. (Answer, First American, 02/10/12); (Answer, Monument, 02/13/12). Monument's Answer also asserted a cross-claim against Defendants Correia and Oak Tree, asserting that if the claims in Plaintiff's Complaint were found to be true, that Correia and Oak Tree were solely liable. (Answer, Monument, 02/13/12). Plaintiff responded with Answers to the New Matter raised in both First American's and Monument's Answers. (Answer to Monument's New Matter, 03/09/12); (Answer to First American's New Matter, 03/09/12). Defendants Correia and Oak Tree then filed an Answer to Monument's cross-claim, followed by an Answer and New Matter to Plaintiff's Complaint, which included their own cross-claim against Monument. (Answer to Cross-Claim, 05/25/12); (Answer to Complaint and Cross-Claim, 06/20/12) (asserting that the damages sustained by Plaintiff, if any, were at least partially the fault of Defendant Monument). Monument then filed a Reply to Correia and Oak Tree's cross-claim, and Plaintiff filed an answer to Correia and Oak Tree's New Matter. (Reply, Monument, 07/06/12); (Answer, Plaintiff, 07/20/12).

Over two years then passed with no new filings. Accordingly, this Court issued a per curiam order terminating the proceeding due to Plaintiff's failure to file a Statement of Intention to Proceed and for lack of activity on the docket. (Order, 01/05/15).[5] Plaintiff then filed a Petition to Reinstate, which was granted by the Honorable David L. Ashworth. (Petition, 01/30/15); (Order, 02/20/15). Defendant Monument subsequently

---

[5] Citing Pa.R.J.A. 1901 ("Where a matter has been inactive for an unreasonable period of time, the tribunal, on its own motion, shall enter an appropriate order terminating the matter.").

6

filed a Motion and supporting brief for Summary Judgment against Plaintiff, including a cross-motion against Defendants Correia and Oak Tree. (Motion, 07/23/15); (Brief, 07/25/15). Defendants Correia and Oak Tree responded with an Answer and Brief in support thereof (Answer, 08/20/15); (Brief, 08/20/15), as did Plaintiff (Answer, 09/02/15); (Brief 09/02/15). Defendant Monument filed a reply, followed by a Praecipe for Assignment and a Praecipe for Oral Argument, at which point the case was assigned to me. (Reply, 09/18/15); (Praecipe for Assignment, 9/28/15); (Praecipe for Oral Argument, 09/23/15). Accordingly, Oral Argument was scheduled for December 3, 2015. (Rescheduling Order, 11/04/15).[6] Before the scheduled Oral Argument, I also received Defendant First American's Motion for Summary Judgment and Brief thereon, followed by Plaintiff's Answer thereto and supporting Brief. (Motion for Summary Judgment, 10/23/15); (Answer, 11/23/15); (Brief, 11/23/15).

During Oral Argument, it became apparent that the parties might be able to resolve their dispute through mediation, and after conferring with their clients, all counsel indicated the parties were willing to make a good-faith attempt. I therefore entered an Order directing that mediation be completed within the next ninety (90) days. (Order, 12/9/15). The mediator subsequently notified me that while all parties made a good faith attempt, mediation was not successful.[7]

Thereafter, upon review of Defendant First American's brief and Plaintiff's response thereto, I granted Summary Judgment in favor of First American. (Order,

---

[6] I originally scheduled Oral Argument for November 9, 2015, but it was rescheduled to December 3, 2015, by agreement of the parties. (Order, 10/1/15); (Rescheduling Order, 11/04/15).

[7] I was also informed that the mediation date had to be pushed back to March 21, 2016 due to a scheduling conflict.

7

04/01/16). Defendant Monument then submitted a Praecipe to assign its July 23, 2015 Motion for Summary Judgment for disposition. (Praecipe, 07/01/16). Upon consideration of the arguments made at Oral Argument, the corresponding Motions and Briefs by Plaintiff, Monument, and Correia and Oak Tree, I granted Summary Judgment in favor of Monument and against Plaintiff, and correspondingly denied judgment against Correia and Oak Tree. (Order, 07/25/16). Three months later, Defendants Correia and Oak Tree also filed a Motion for Summary Judgment against Plaintiff, and a corresponding Brief. (Motion, 10/18/16) (Brief, 10/18/16). The Motion went unanswered, and I entered an Order in favor of Defendants accordingly. (Order, 11/23/16).

Plaintiff then filed an untimely Answer and Brief opposing Correia and Oak Tree's Motion, followed by a Motion to Quash my Order and Brief in Support thereof. (Answer, 11/25/16); (Brief, 11/25/16); (Motion to Quash, 12/02/16); (Brief, 12/02/16). Defendants filed a Response and corresponding Brief. (Response, 12/09/16); (Brief, 12/09/16). Upon review, I scheduled a conference to determine whether Plaintiff should be granted an extension. (Order, 12/12/16). At the conference, Plaintiff explained that a recent change to the Local Rules caused him to miscalculate the number of days for filing a response, and requested that, in the interest of justice, I excuse the late filing and consider the Motion on its merits. I granted that request, but still ultimately found in favor of Defendants Oak Tree and Correia. (Order, 12/14/16).[8] Plaintiff then appealed all my Orders on Defendants' Motions for Summary Judgment. (Notice of Appeal, 12/28/16). At my direction, Plaintiff has also timely filed a Concise Statement, and Defendants

---

[8] Defendants Correia and Oak Tree did not request summary judgment against co-defendant Monument in that Motion however, and I therefore have not yet technically issued a ruling on that issue. (Motion, 10/18/16).

8

Monument and First American have filed responses thereto. (Order, 01/04/17);
(Statement, 1/24/17); (Response, Monument, 2/03/17); (Response, First American,
2/03/17).

## DISCUSSION

Plaintiff 's Concise Statement of Errors alleges that I committed twelve errors of
law or abuses of discretion in granting Summary Judgment in favor of Defendants.
Below, I have listed each of Plaintiff's claims in a more concise and organized manner:[9]

A. Defendant alleges I erroneously granted **Monument's** Motion for
   Summary Judgment because: I (1) erroneously interpreted the express
   language of the sales agreement (breach of contract claim); (2)
   inappropriately applied the Parol Evidence Rule (breach of contract); (3)
   erred in holding that the statute of limitations barred Plaintiff's claims
   against Defendant Monument (tort claims); (4) erred in finding that Plaintiff
   could not plead an unjust enrichment claim and in the alternative, a breach
   of contract claim; and (5) erred in holding that Plaintiff's claims against
   Monument were barred by the merger doctrine (breach of contract).

B. Plaintiff alleges I erred in granting Defendants **Correia and Oak Tree's**
   Motions for Summary Judgment because I: (6) erroneously interpreted the
   express language of the sales agreement (breach of contract); (7)

---

[9] I also note Defendant Monument's Response to Plaintiff's Statement, which argues that Plaintiff has waived all claims for failing to file a sufficiently *concise* Statement. (Response of Defendant Monument, CI-09-07984, 02/03/17) (citing Jones v. Jones, 878 A.2d 86, 89–90 (Pa. Super. 2005). I find that Plaintiff's Statement at least borders on meriting such a waiver.

9

1209a

inappropriately applied the Parol Evidence Rule (breach of contract); and

(8) erred in holding that Plaintiff's claim for breach of fiduciary duty against

Correia and Oak Tree failed to state a cause of action upon which relief

may be granted.

C. Plaintiff alleges I erred in granting Defendant **First American's** Motion for

Summary Judgment because I: (9) misinterpreted the express language of

the Sales Agreement; (10) improperly applied the Parol Evidence Rule;

(11) erred in holding the statute of limitations barred Plaintiff's claims

against First American; and (12) erred in holding that collateral estoppel

precluded Plaintiff's claims against First American.

While Plaintiff characterizes many of the above claims as erroneous "holdings," the only holdings I made in this case were that the Defendants were entitled to Summary Judgment—this did not require me to reach all of the above conclusions that Plaintiff alleges I erroneously reached in deciding this case. While I understand Plaintiff's desire to make alternative arguments to preserve all issues for appeal, it would be unnecessarily cumulative for me to address each of these claims individually. I therefore limit this Opinion to addressing those claims that were relevant to my decisions to grant the Summary Judgment Motions:[10]

---

[10] I also note that Plaintiff's appeal is technically premature. To wit, Defendants Correia and Oak Tree's Motion for Summary Judgment made no request as to their cross-claim against Monument. (Motion, 10/18/16). Accordingly, I made no ruling on that issue when I granted Defendants' Motion, and a final, appealable Order has therefore yet to be issued in this case. See (Order, 07/25/16). "Under Pennsylvania Law, an appeal may only be taken from an interlocutory order as of right, from a final order, from a collateral order, or from an interlocutory order by permission." Continental Bank v. Andrew Building Co., 648 A.2d 551, 565 (Pa. Super. 1994) (citations omitted). Rule 341(c) provides that "when multiple parties are involved, the trial court . . . may enter a final order as to one or more but fewer than all of the claims and parties *only upon an express determination* that an immediate appeal

10

## I. Summary Judgment in Favor of Defendant Monument was Proper

In his Complaint, Plaintiff alleged the following claims against Defendant Monument: (1) Breach of Contract; (2) Unjust Enrichment; (3) Fraud in the Inducement; and (4) Conspiracy to Commit fraud. Defendant Monument was entitled to Summary Judgment on all of these claims for the following reasons:

### A. Plaintiff's breach of contract claim against Monument is barred by merger doctrine and the express language of the deed.

Plaintiff's breach of contract claim relies on an alleged breach of the Agreement of Sale,[11] and, as Plaintiff first raised in response to Defendant Monument's Motion for Summary judgment, warranties within the deed itself. (Complaint, CI-09-07984, 12/08/11); (Plaintiff's Answer to Defendant, Monument Street Funding, LLC's Motion for Summary Judgment, 09/02/15).

As to the Agreement of Sale, "merger is said to be the rule, except when the intention of the parties is otherwise, or where the stipulations in the contract sought to be enforced are collateral to the functions performed by the deed." Caresk Corp v. Stephen Schifter, Inc., 246 A.2d 365, 370 (Pa. 1968). Therefore, for a breach of contract claim to succeed based on the Agreement of Sale, Plaintiff must have at least alleged facts indicating an intent for the terms of the Agreement of Sale to survive

---

would facilitate resolution of the entire case." Pa. R.A.P. 341(c) (emphasis added). Since I have not issued an "express determination," Plaintiff's appeal is technically premature and should be quashed. In fairness to Plaintiff, this issue is purely procedural, since granting Defendants Correia and Oak Tree's Motion against Plaintiff means their claims against Defendant Monument, which are contingent on the success of Plaintiff's claims, cannot possibly succeed.

[11] Plaintiff repeatedly refers to the Agreement of Sale as the "Sales Agreement." For clarity, I refer to it only as the "Agreement of Sale," as that is the title of the document in the contract.

11

notwithstanding the deed, or have pointed to specific, collateral stipulations within the contract. Plaintiff has made no such averments here, and a review of the Agreement of Sale itself does not contain any such provisions. Summary Judgment in favor of Monument was therefore appropriate as to Plaintiff's breach of contract claims.[12]

Plaintiff's claim based on the deed itself also fails. Plaintiff asserts in his Statement that "the deed contains the following covenants and representations: (a) the metes and bounds of the deed purported to convey a certain amount of acreage which Defendant did not convey; and (b) the deed was a special warranty deed that guaranteed good and marketable title to the Property." (Statement at 8). Nowhere in Plaintiff's Complaint, however, does he state a cause of action against Monument based on a breach of contract or breach of warranty within the deed itself. Accordingly, Summary Judgment in favor of Monument was appropriate with respect to these arguments. Regardless, the arguments would be meritless even if Plaintiff were permitted to amend his Complaint to include such a claim.

Addressing argument "(a)," due to its vague wording, I find it unclear exactly what argument Plaintiff was trying to assert.[13] I believe Plaintiff's position is the following: the deed promises a certain amount of acreage, whether Plaintiff believes that acreage is the ".09919 Acre," listed in the deed, the .68 Acres he believes he was verbally

---

[12] Since the Agreement of Sale merged into the deed, the "3 parcels" language is irrelevant. Therefore, Plaintiff's claim that I should have included parol evidence to define that term must also fail.

[13] Since Plaintiff uses no numbers, it is unclear if Plaintiff is talking about the .68 acres he thought he was getting based on Correia's representations, or if he is referring to the ".09919 Acre" listed in the deed. I only presume Plaintiff is referring to the ".09919 Acre" description, because, as discussed above, any claim based on the .68 acres is clearly barred by the merger doctrine, and no other acreage figure is listed on the deed. See also Jones v. Jones, 878 A.2d 86, 89–90 (Pa. Super. 2005) (holding issues were waived on appeal due to lengthy and unmanageable concise statement).

12

promised, or some other number entirely, is unclear. The deed lists no acreage other than the .09919 figure.[14] Regardless, Plaintiff's argument appears to be that since there was an overlap with the Ritchey Parcel, Monument has breached a warranty of title, as that overlap caused Plaintiff to not get the full acreage to which he believes he was entitled under the deed. This argument fails no matter what acreage is used, since it would require us to completely ignore the express exemptions in the deed.

The deed expressly excludes from warranty any "conditions that would be revealed by a physical inspection and *survey* of the Property," or "presently recorded instruments." (Complaint, Exhibit C) (Plaintiff's Deed) (emphasis added). As Judge Farina has already concluded, and as Plaintiff has admitted, a *survey revealed* the twenty-two-foot overlap. (Memorandum Sur Appeal Pa.R.A.P. 1925(a), CI-09-07922, 09/09/10); (Kreider Deposition, at 152–53). Also by Plaintiff's own admission, his examination of the title *record* revealed the existence of the Ritcheys' deed, which convinced him to give up the garage. (Kreider Deposition at 35–37). Plaintiff has also admitted that *if he had obtained a survey* before purchasing the property, he would have discovered that it did not contain the garage. (Kreider Deposition at 107). By determining the exact boundary lines of the property, a *survey* would also have undoubtedly revealed whether the .68 or .09919-acre descriptions were accurate. Because such "defects" were expressly excluded under the deed, Plaintiff's arguments on this point are meritless, and, considering Plaintiff's own admissions, I also question

[14] This issue becomes even more convoluted when we take into account Plaintiff's assertion in the background section of his Complaint that, due to the loss of the twenty-two-foot overlap, which consists of about .21 acres, his acreage decreased from .68 acres to .47 acres. Plaintiff's arithmetic therefore reveals that the portion containing the garage, which was not a part of the .21 acre overlap, could not have ever been part of the original .68-acres. (Complaint, ¶125).

13

1213a

their sincerity.[15] By extension, any such breach being expressly excluded, Plaintiff's argument "(b)" must also fail.

## B. Plaintiff's Unjust Enrichment Claim is Barred by the Existence of the Contract

Plaintiff's Statement of Errors asserts that I erred by holding that Plaintiff could not plead "an unjust enrichment claim in the alternative of a breach of contract claim." I made no such holding. I granted Summary Judgment in favor of Monument on the unjust enrichment claim because there was no genuine issue of material fact that a contract between Plaintiff and Defendant actually existed (the deed), and that it covered the subject matter of the claim. Plaintiff's unjust enrichment claim is therefore precluded by the existence of the contract itself, not by virtue of him pleading it in the alternative.[16]

## C. Plaintiff's Tort Claims Are Barred by the Statute of Limitations

Plaintiff's other two claims against Monument lie in tort law.[17] Plaintiff admits that he discovered the underlying issue in September 2007. (Complaint, CI-09-07984, 12/8/11, at 3 ¶ 19). At the very latest, Plaintiff knew about the overlap and lack of garage through a survey by August, 2008. (Kreider Deposition, at 153); (Statement, at 6

---

[15] Plaintiff also cites Lulay v. Barnes, 172 Pa. 331 (1896) in his Statement, as vague support for his claim that merger doctrine does not preclude his claims. A cursory review of that case reveal it to be factually distinct from the case at bar. Briefly, the Court in that cased allowed admission of parol evidence where the deed's legal description was illegible, written in German, and where there was a dispute over whether the deed included coal rights.

[16] "Unjust enrichment is not applicable where the relationship among the parties is based on an express agreement." Birchwood Lakes Community Ass'n, Inc. v. Comis, 442 A.2d 304, 309 (Pa. Super. 1982). And, "It is clear that the doctrine of unjust enrichment does not deal with situations in which the party to be charged has by word or deed [no pun intended] legally consented to assume a duty toward the party seeking to charge him. Instead, it applies only to situations where there is no legal contract." Wingert v. T.W. Phillips Gas & Oil Co., 157 A.2d 92, 105 (Pa. 1959).

[17] Fraud in the inducement, and conspiracy to commit fraud.

14

1214a

¶ 5A). However, Plaintiff did not Amend his Praecipe to include Monument until April 1, 2011. (Praecipe to Amend and Reissue Writ, CI-09-07984, 4/1/11); (Statement, at 6 ¶ 5A). Because the statute of limitations for these claims is two years, I need not look any further at their merits. See 42 Pa.C.S.A. § 5524(7).

## II. Summary Judgment in favor of Correia and Oak Tree was Proper

Plaintiff brought the following claims against Defendants Correia and Oak Tree: (1) Fraud in the Inducement; (2) Conspiracy to Commit Fraud; (3) Breach of Contract; and (4) Breach of Fiduciary Duty. However, Plaintiff's Statement only alleges I erred as to his Breach of Contract and Breach of Fiduciary Duty claims. Accordingly, this Opinion only addresses those two claims.

### A. I Properly Granted Summary Judgment in favor of Defendants Correia and Oak Tree as to Plaintiff's Breach of Contract Claim

In his Statement, Plaintiff alleges I erred in granting summary judgment on his breach of contract claims against Correia and Oak Tree because I (a) misinterpreted the express language of the Sales Agreement; and (b) inappropriately applied the Parol Evidence Rule. Both claims are meritless.

In support of the former, Plaintiff avers that Defendants breached duties imposed by the "express language" of the Agreement of Sale's "Business Relationship Agreement and Dual Agency [Addendum]." While quoting no language from either document, Plaintiff asserts that those documents imposed a duty on Defendants to ensure that Plaintiff was

> purchasing what he thought he was purchasing, to wit: accurately and specifically identifying the physical attributes of the Property which includes:

15

the proper owner; the correct lot size; correctly identifying improvements thereon; and any identifying latent defects that may exist. In other words, Moving Defendants, as buyer's agent, were responsible to ensure that the Sales Agreement properly defined the Property that Plaintiff thought (through Defendants' representations) he was buying.

(Statement, at 4, ¶ 2.A.ii.).

While citing the Business Relationship Agreement and the Addendum, Plaintiff neither points to nor quotes any language within the documents to support his reading of the contract. This may be because nothing in the contract supports his assertion. To the contrary, the Business Relationship Agreement states the following:

> **GENERAL INFORMATION:** If a Buyer wants information regarding conditions of the property, financial, legal, or other activities, Buyer is directed to seek appropriate professional or technical advisors. Unless agreed [illegible], the property is sold in its present condition. However, Buyer may request that the property be inspected at Buyer's expense. Buyer's request for any inspection should be made a part of the inspection Addendum to the Agreement of Sale.

(Complaint, CI-09-07984, Exhibit B, Agreement of Sale, 6/7/07, at 7) (Business Relationship Agreement).

Moreover, the Dual Agency Addendum only requires the agent to report any "*known* latent defects" to the buyer. Id. at 8 (Dual Agency Addendum) (emphasis added). It also specifically includes an indemnification clause:

> Seller and buyer agree to indemnify and hold Broker/Licensee harmless against all claims, damages, losses, expenses or liabilities other than intentional wrongful acts or violation of Pennsylvania real estate license law arising from Broker/Licensee's role as a dual agent. Seller and buyer shall have a duty to protect their own interests and should read this Agreement and any Agreement of Sale carefully to ensure that they accurately set forth the terms which they want included in said agreement.

Id. Flipping to the next page, "Addendum #1," reveals substantially more limitations on the agent's liability, including that the Special Warranty Deed would

16

contain exceptions for "[a]ll presently recorded instruments (other than liens and conveyances by, through or under the Grantor) that affect the Property and any portion(s) thereof," and "[a]ny conditions that would be revealed by a physical inspection and survey of the property." Id. at 9 (Addendum #1). Addendum #1 also states that the Buyer is aware that the Property is being sold in an

> AS IS CONDITION WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE. Buyer acknowledges, on behalf of itself, its opportunity to inspect and investigate the property and all improvements thereon, either independently or through agents of Buyer's choosing, and that in purchasing the property Buyer is not relying on any statements or representations made by Seller or Seller's agents as to the condition of the property and/or any improvements thereon, including, BUT NOT LIMITED TO, heating, sewage, roof, foundations . . . .

Id. at 10.

Finally, the Agreement of Sale's Integration Clause states the following:

> It is understood that the Buyer has inspected the Property and any personal property to be included in the sale or hereby waives the right to do so. He has agreed to purchase it as a result of such inspection and not because of or in reliance upon any representations which are not included in this agreement whether made by any Broker, transaction licensee or any of their respective salespeople, employees, officers and/or partners.

(Agreement of Sale, CI-09-07984, 6/7/07, at 3, ¶ 22).

How Plaintiff believes I misinterpreted this express language is beyond me, and he has certainly failed to adequately explain what error he believes I made. Accordingly, Plaintiff's claims that I erred in my interpretation of the language of the Agreement of Sale should be dismissed.

Plaintiff's other claim, that I misapplied the parol evidence rule, is based on the use of the term "3-parcels," which Plaintiff avers is ambiguous. First, just as Plaintiff's claims based on the Agreement of Sale were barred based on merger doctrine as to his

17

1217a

claims against Monument, they are so barred here, as the description of the property is subsumed directly by the deed. See supra Part I.A. Regardless, the claim fails notwithstanding application of the merger doctrine.

> Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as to the contract is almost always inadmissible to explain or vary the terms of the contract. One exception to this general rule is that parol evidence may be introduced to vary a writing meant to be the parties' entire contract where a party avers that a term was omitted from the contract because of fraud, accident, or mistake. In addition, where a term in the parties' contract is ambiguous, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances.

Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 437 (Pa. 2004) (quotations and citations omitted). In his Statement, Plaintiff's arguments only amount to an assertion that the term "3 parcels" is ambiguous. (Statement, at 4 ¶ 2B). I will therefore limit my analysis to such a claim, and will not address any possible arguments for claims of fraud or mistake.[18]

While the general rule is that parol evidence is admissible to resolve an ambiguity, such evidence still must be relevant and material to the contract. See Dahath Electric Co. v. Suburban Electric Development Co., 2 a.2d 765, 768 (Pa. 1938) (declining to consider Plaintiff's claims where immaterial and insufficient to affect the writing). Here, the above-quoted, express language of the contract precludes any analysis of the term, "3-parcels," as the contract as a whole clearly puts the onus on

---

[18] I will note, however, that in light of all the disclaimers in the Agreement of Sale, I find it entirely incredible that Plaintiff's misunderstanding of the term "3-parcels" had any bearing on his entering into the contract. Moreover, by Plaintiff's own admission, the term was completely unimportant to him, as he "just kind of assumed that they were just parcels put together into one lot." (Kreider Deposition at 24).

18

Plaintiff to conduct his own inspection of the property, obtain a survey, and to search the conveyancing record. Indeed, the outcome here would have be no different for Plaintiff if I had held a hearing and Defendant Correia had told me what he thought "3 parcels" meant. The contract would still have made it Plaintiff's responsibility to conduct a title search and a survey to determine what he was truly getting.[19] Accordingly, because application of the merger doctrine precludes Plaintiff's parol evidence claim, and because the term would not be admissible regardless, Summary Judgment in favor of Defendants was appropriate.

**B. I Properly Granted Defendants Correia and Oak Tree's Summary Judgment Motion as to Plaintiff's Breach of Fiduciary Duty Claim**

In his Statement, Plaintiff avers that I erred in granting Defendants' Motion for Summary Judgment on his Breach of Fiduciary Duty Claim, alleging that Defendant Correia breached its duty to act properly as a dual agent.

In support of his argument, Plaintiff cites the following statutory provision: "In addition to the duties generally required of a licensee as set forth in section 606.1, the duties of a dual agent include the following: (1) to take no action that is adverse or detrimental to either party's interest in a transaction.' 63 P.S. § 455.606d(b)(1)." Plaintiff again relies on the "3 parcels" language in the Agreement of Sale, averring that this term caused him to incorrectly believe he was getting the garage and surrounding area. While Plaintiff correctly cites the plain language of the statute, I do not believe our legislature intended for the rule to impose strict liability on an agent. Rather, a

---

[19] Obviously, Plaintiff may then have been entitled to some other claims, such as fraud or mistake, but as I previously noted, Plaintiff does not raise any such parol evidence claim in his Concise Statement.

19

successful claim of breach of fiduciary duty still requires a showing of causation, and intent or negligence on the part of the agent.

While there appears to be no case law addressing the particular statutory provision cited by Plaintiff, the Pennsylvania Standard Civil Jury Instructions are instructive. They require the Plaintiff to prove the following elements: (1) the defendant negligently or intentionally failed to act in good faith and solely for the benefit of the plaintiff, or negligently or intentionally failed to use reasonable care in carrying out his duties, (2) that Plaintiff suffered injury; and (3) that the agent's failure was a real factor in bringing about the plaintiff's injuries. PSCJI § 6.210 (2015). Further, "[i]f the damages in question would have been sustained even if the agent or fiduciary had not been negligent or acted wrongfully, then the defendant's conduct would not be a factual cause in causing the plaintiff's damages." PSCJI § 2.30 (2015).

While Plaintiff was likely damaged due to a genuine mistake regarding the characteristics of the property, the record does not support any genuine issue of material fact as to whether Defendants acted intentionally or negligently. Regardless, even if Plaintiff genuinely believed that Defendant Correia used the term "3-parcels" to trick him, there would still be no genuine issue as to whether Plaintiff's injuries were *caused* by the use of the term. Indeed, by Plaintiff's own admission, the term had no effect on him. He "just kind of assumed that they were just parcels put together into one lot." (Kreider Deposition at 24). By that reasoning, Defendants could have written anywhere from one to fifteen parcels and it would have made no difference to Plaintiff— he still would have neglected to obtain a survey, leaving him in the same predicament. Since the "3 parcels" language cannot genuinely be said to be the cause of Plaintiff's

20

harm, Summary Judgment in favor of Defendants Correia and Oak Tree on the Breach of Fiduciary Duty claim was appropriate.

### III. Summary Judgment in favor of First American Was Proper

Plaintiff's Complaint states only a breach of contract claim against Defendant First American. And while Plaintiff's Statement makes four (4) specific averments about the "holdings" I made in favor of First American on that claim, I need only address Plaintiff's claims that I erred in my interpretation of the contract and application of the parol evidence rule.

### A. Plaintiff's Argument that I Misinterpreted the Title Insurance Policy is Meritless

Plaintiff's concise statement avers that I erred in granting Defendant First American's Motion for Summary Judgment based on my "interpretation of the express language contained in the Sales Agreement, and/or the application of the parol evidence rule thereto." (Statement at 5, ¶ 3). I believe this was a typographical error, as, in granting First American's Motion, any language in the Agreement of Sale was completely irrelevant. First American was only a party to the title insurance policy, not the Agreement of Sale. (Complaint, Exhibit D, Owner's Title Insurance Policy, Schedule A). I will assume then that Plaintiff intended to argue that I misinterpreted the *title insurance policy*, not the Agreement of Sale.

In support of this claim, Plaintiff avers in his Statement that First American should have discovered a defect based on the inclusion of two tax parcel numbers in the description of the property. In part, the title insurance policy describes the Property as "Parcel No. 300-99264-0-0000; and Parcel No. 300-98628-0-000." Plaintiff essentially

21

argues that because First American's policy insured title to Parcel No. 300-98628-0-0000 (hereinafter 98628), and since title to that parcel became in dispute, First American should indemnify him.[20] Plaintiff simultaneously contends that use of the tax parcel numbers is ambiguous, and that I should have permitted parol evidence to determine the meaning of the parcel numbers.

First, to dispose of the parol evidence claim, Plaintiff's argument fails to give full effect to all the terms of the deed. Any ambiguity created by the Parcel ID Numbers was resolved within the contract itself through the more precise metes and bounds description.[21] Since the document itself defined the bounds of the property, I properly excluded any parol evidence to that effect. By extension, Plaintiff's claims relying on the inclusion of the Parcel ID Numbers also fails, as First American could only have discovered any discrepancy between the metes and bounds description and the Parcel ID Numbers through a survey.[22] The title insurance policy expressly excludes "Any encroachments, easements, measurements, variations in area or content, party walls or other facts which a correct survey of the premises would show." (Complaint, Exhibit D).

---

[20] Plaintiff implies in his Statement that he was deprived of all possession of parcel 98628, but a review of the record seems to indicate that, at most, he was actually deprived of only a portion of it: Ritchey's deed from the Staabs does not even contain either Parcel ID number listed in Plaintiff's deed (neither 98628, nor 99264) only a single, entirely different number: Parcel ID NO. 300-00382-0-0000. (Complaint, Exhibit E); moreover, the survey maps made in conjunction with the quiet title action seem to indicate that Plaintiff remains in possession of the majority of Parcel ID NO. 98628. (Motion of Defendant Monument Street Funding, LLC, for Summary Judgment, CI-09-07984, 6/23/15, Exhibit K, Additional Response #5).

[21] All the language of the deed must be given effect and when the language of the deed is clear and unambiguous the intent of the parties must be gleaned solely from its language. In re Conveyance of Land Belonging to City of DuBois, 335 A.2d 352, 358 (Pa. 1975)

[22] While Plaintiff argues the finding is not controlling in this case, I note that our trial court has also previously reached the same conclusion, holding that the twenty-two-foot overlap could not have been "discovered by any demonstrable conveyancing error attributable to the deeds to either lot." (Memorandum Sur Appeal, CI-09-07922, 9/9/10).

22

As Plaintiff's arguments rely solely on boundary issues expressly excluded by the policy, Summary Judgment in favor of First American was appropriate.[23]

## Conclusion

Stated simply, Plaintiff took a risk when he bought foreclosed real property without a survey. Indeed, he even signed a contract acknowledging that risk. The law does not now allow him to shift the burden of that risk to the other parties simply because the risk didn't pay off. Accordingly, Plaintiff's arguments are meritless, and Summary Judgment in favor of Defendants was appropriate. Accordingly, I enter the following:

---

[23] Plaintiff makes no claims regarding the chain of title, which, if it contained a defect, First American would actually have been obligated to defend. In point of fact, the actual chain of title appears to be clean. Like Plaintiff's deed, Monument's Sheriff's Deed granting it the Property from the Staabs contained both tax parcel numbers, and both deeds have matching legal descriptions.

23